IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ANDY JOSEPH HAHN                                    Civil No. 06-457-JE

    Petitioner,                             FINDINGS AND RECOMMENDATION

v.

SHARON BLACKETTER,

    Respondent.


ANTHONY D. BORNSTEIN
Assistant Federal Public Defender
101 SW Main St., Suite 1700
Portland, OR 97204

    Attorney for Petitioner

HARDY MYERS
Attorney General
JONATHAN W. DIEHL
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301

    Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

JELDERKS, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He challenges his state robbery conviction on the basis that he was the victim of ineffective assistance of counsel. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#2) should be denied, and judgment should be entered dismissing this case with prejudice.

## BACKGROUND

Petitioner and his girlfriend, Sundee Scovill ("Scovill"), lived together for approximately two months in 1999. As part of the arrangement, Scovill was to pay Petitioner $100 per month in rent and contribute to expenses once she found employment. Trial Transcript, p. 44. Petitioner had no bank account and he kept his money in a hidden space beneath the floor-boards in their bathroom. *Id.* at 136-37. Only he and Scovill knew about the hiding place. *Id.* at 38, 155.

On the morning of June 19, 1999, Petitioner and Scovill had a disagreement regarding the nature of their relationship. In the early afternoon, Petitioner left with his friends, but before leaving, he counted the money he had in the hidden space. *Id.* at 49, 139. When he left, Scovill had no money of her own. *Id.* at 53, 140, 152.

Scovill also went to see her friends and, upon hearing of Petitioner's alleged infidelity, decided to move to California to

2 - FINDINGS AND RECOMMENDATION -

live with her mother. With her friend, Zora, she returned to the apartment, gathered her belongings, took $100 from the hiding place, "trashed" the apartment, and left. *Id.* at 32, 47-50. Scovill justified taking $100 because she had given Petitioner that amount for rent earlier in the month. *Id.* at 32, 50. Zora also took $40 from the hiding place. *Id.* at 50.

A friend's mother gave Scovill money for a bus ticket to California the next day, and her father gave her $25 for food during her trip. *Id.* at 33. She bought luggage for her trip and had about $40-$50 remaining at midnight. *Id.* That night, Scovill decided to try to talk to Petitioner to explain her actions. *Id.* at 34.

Petitioner returned home with his friend, Lance, at approximately 1:00 a.m. and was intoxicated. *Id.* at 152. Upon entering, he found his apartment ransacked, his girlfriend's belongings gone, and his cash missing. Petitioner suspected Scovill took his money. *Id.* at 140. Petitioner went to a pay-phone near his apartment to try to contact Scovill, leaving Lance at the apartment. When Petitioner saw a police officer pull into the gas station, Petitioner reported that his girlfriend has stolen $400 from him. *Id.* at 141.

A short time later, as Petitioner was walking with his friend, Eric, Scovill called to Petitioner from a nearby parking lot where she was sitting. *Id.* at 35, 142. Petitioner confronted her

3 - FINDINGS AND RECOMMENDATION -

yelling, "where's my money, bitch?" *Id.* at 35. A physical altercation ensued wherein Scovill fell to the ground and Petitioner proceeded to punch, kick and choke her. *Id.* When Petitioner demanded she return his money, Scovill eventually removed between $40 and $50 from her wallet and threw it at him. *Id.* at 37. The fight lasted approximately 30 minutes, until Lance arrived and restrained Petitioner. Scovill's friends took her to the police station to report the assault.

Following this incident, Petitioner was indicted for Robbery in the First Degree, Robbery in the Second Degree, Theft in the Second Degree, Assault in the Third Degree, and Assault in the Fourth Degree. Petitioner rejected the State's offer of an 18-month sentence in exchange for guilty pleas to Attempted Robbery in the Second Degree and Assault in the Third Degree, with no prosecution for witness tampering based on a post-indictment attempt to contact Scovill. Petitioner proceeded with a jury trial presenting the defense that he had an honest claim of right to the money taken from Scovill.

After the State's case in chief, the court granted Petitioner's motions for Judgment of Acquittal on Robbery in the Second Degree and Assault in the Third Degree. *Id.* at 120. Petitioner also moved for Judgments of Acquittal on Robbery in the First Degree and Theft in the Second Degree, but the court denied these motions. *Id.* at 122. The jury found Petitioner guilty of

Robbery in the First Degree and Assault in the Fourth Degree, but not guilty of Theft in the Second Degree. Petitioner was sentenced to 90-months in prison under Oregon's mandatory minimum sentencing law on the Robbery conviction, and he received a concurrent 6-month sentence on the assault conviction. Sentencing Transcript, p. 9.

Petitioner directly appealed his conviction, but the Oregon Court of appeals affirmed the trial court without opinion. *State v. Hahn*, 184 Or.App. 761, 58 P.3d 244 (2002). The Oregon Supreme Court denied review. *State v. Hahn*, 335 Or. 195, 64 P.3d 576 (2003).

Petitioner filed for post-conviction relief ("PCR") on the basis of ineffective assistance of counsel, but the PCR trial court denied relief. Respondent's Exhibit 122. The Oregon Court of Appeals summarily affirmed the PCR trial court, and the Oregon Supreme Court denied review. Respondent's Exhibit 126, 128.

In his *pro se* Petition, Petitioner presents two grounds for relief premised on ineffective assistance of trial counsel. In his memorandum, Petitioner clarifies these two claims, abandoning Ground One and characterizing Ground Two as "counsel failed to properly investigate and prepare the case and counsel further failed to properly advise [Petitioner] concerning the unavailability of the Honest Claim of Right defense in his case." Petitioner's Memorandum in Support of Petition, p. 9. Petitioner argues he is entitled to relief under § 2254(d)(1). *Id.* at 16.

5 - FINDINGS AND RECOMMENDATION -

Respondent contends relief should be denied because "the State court's finding that Petitioner failed to meet his burden of proof on these claims was not contrary to or an unreasonable application of *Strickland v. Washington*, 466, U.S. 668 (1984)." Respondent's Response, pp. 1-2.

## DISCUSSION

### A. Standards and Scope of Review under § 2254.

The standard of review applicable to habeas corpus petitions on behalf of a person in custody pursuant to the judgment of a state court is set out in 28 U.S.C. §2254 (d):

> An application [ ] shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 386-89 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review.

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005). A state court decision is "contrary to" clearly established Federal

6 - FINDINGS AND RECOMMENDATION -

law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams,* 529 U.S. at 388.

An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert,* 393 F.3d at 974 (citing *Williams*). "The state court's application of . . . law must be *objectively unreasonable*." *Williams*, 529 U.S. at 411 (emphasis added). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Id.*

In reviewing state court decisions, "[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004). This is a standard that will be met in few cases. *Id.* at 1000. When unchallenged, State court determinations of factual issues "shall be presumed to be correct." 28 U.S.C. §2254(e)(1); *Miller-el v. Cockrell*, 537 U.S. 322, 340 (2003). A Petitioner may rebut the presumption of correctness with clear and convincing evidence. *Id.*

7 - FINDINGS AND RECOMMENDATION -

Here, the state PCR trial court decision states that Petitioner did not met his burden of proof.[1] Review by this court is to determine whether the state court was objectively unreasonable, under governing law, in denying Petitioner's ineffectiveness claims.

**B.   Ineffective Assistance of Counsel.**

The principles articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), govern claims of ineffective assistance of counsel. A claim of ineffective assistance of counsel requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. "Not every error that conceivably could have influenced the outcome undermines the reliability of the results of the proceeding." *Id.* at 693. Furthermore, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation. *Id.* at 690.

---

[1] Respondent's Exhibits 121 and 122.

8 - FINDINGS AND RECOMMENDATION -

## C. The Merits.

Petitioner alleges "counsel failed to properly investigate and prepare the case and counsel further failed to properly advise [Petitioner] concerning the unavailability of the Honest Claim of Right defense in his case." The state PCR court held Petitioner did not meet his burden of proof and denied relief. Respondent's Exhibit 121, p. 8; Respondent's Exhibit 122. Based on a careful review of the record, I do not find the PCR trial court's decision to be objectively unreasonable.

The PCR trial court considered conflicting evidence as to Petitioner's claims. In finding Petitioner did not meet his burden of proof, the court conveyed that it credited trial counsel's affidavit over Petitioner's deposition testimony. *See Marshall v. Lonberger*, 459 U.S. 422, 433 (1983) (credibility determination was implicit in rejection of defendant's claim); *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990) citing *Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986) (in certain circumstances factual determinations are implicit in the actions of the court). It was not unreasonable for the PCR trial court to credit counsel's affidavit over Petitioner's testimony in light of the evidence before that court.

In his deposition, Petitioner expressed his belief that an element required for conviction of Robbery, serious injury or attempt to seriously injure, was missing and that with more

9 - FINDINGS AND RECOMMENDATION -

emphasis on that point he would have prevailed at trial. Respondent's Exhibit 111, pp. 11-12, 32-33. Based on Petitioner's beliefs, the state challenged his contention that he would not have gone to trial had he known the Honest Claim of Right defense was not valid. *Id.* Counsel's affidavit also specified that counsel encouraged Petitioner to accept the state's plea offer, but that Petitioner would not accept any plea that involved prison time. Respondent's Exhibit 113, p. 2. In addition, the sentencing transcript shows trial counsel argued that *State v. Martin* could be distinguished on the facts presented.[2] Sentencing Transcript, pp. 10-11. It was a reasonable tactical decision to present Honest Claim of Right as a defense. *See State v. Ramsey*, 184 Or.App. 468, 56 P.3d 484 (2002) (distinguishing his attempt to recover money improperly taken while gambling from the debt collection in *Martin*, defendant successfully argued that the trial court erred in not instructing the jury on the honest claim of right defense to the theft element of robbery.)

Petitioner did not show that counsel's representation was below acceptable standards and that there was a reasonable probability that the outcome of the proceedings would have been different absent counsel's deficiencies. Accordingly, the PCR trial court decision was neither contrary to, nor an unreasonable

---

[2]In *Martin*, the Oregon Court of Appeals held "the creditor's intent to collect a debt from his debtor by force is not a defense to a charge of robbery." 15 Or.App. 498, 504 (1974).

10 - FINDINGS AND RECOMMENDATION -

application of clearly established federal law.

## CONCLUSION

For the reasons stated above, the Petition for Writ of Habeas Corpus (#2) should be DENIED and judgment should be entered DISMISSING this case with prejudice.

## SCHEDULING ORDER

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issue, and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 26 day of February, 2008.

_____
John Jelderks
United States Magistrate Judge

11 - FINDINGS AND RECOMMENDATION -